**PAYNE ADVERTISING AGENCY, Inc., v. WILHELM.**

No. 3997.

Court of Civil Appeals of Texas. El Paso.

Nov. 14, 1940.

Rehearing Denied Dec. 5, 1940.

Birkhead, Beckmann, Stanard & Vance, of San Antonio (W. Glendon Roberts, of San Antonio, of counsel), for appellant.

Hugh L. Steger and Seeligson, Cox & Patterson, all of San Antonio, for appellee.

PRICE, Chief Justice.

This is an appeal from the judgment of one of the District Courts exercising jurisdiction in Bexar County. Payne Advertising Agency, Inc., brought suit against the defendant, Stephen R. Wilhelm, for damages in the alleged sum of $4,594.59 for defendant's breach of his employment contract and on a sworn account in the sum of $275.92. The case was tried to the court without a jury, and though judgment was rendered in favor of plaintiff on the sworn account, the judgment denied plaintiff a recovery on account of its alleged cause of action for damages for defendant's breach of his employment contract. No complaint is made of the judgment on the sworn account. Plaintiff duly perfected this appeal and the case is here for review.

The parties throughout have designated themselves in accordance with their designation in the trial court, and they will be so designated in this opinion.

On motion of the plaintiff the court made findings of fact and conclusions of law. While same are somewhat lengthy, it is deemed appropriate to set them out in full.

"Findings of Fact.

"I. Since sometime prior to September, 1936, to date of this trial, plaintiff was engaged in the general advertising agency business in the City of San Antonio, Texas, in which plaintiff rendered various advertising services to its customers, through the various means of advertising, such as radio programs, newspapers, magazines, billboards, and placards. Plaintiff's compensation for rendering such advertising services was in the nature of commissions based on a certain percentage of the sums spent by its customers for the advertising handled by plaintiff. Plaintiff had no understanding or contract with said radio customers as to the continuation or duration of their business, or as to the amount thereof, which amount fluctuated.

"II. Prior to September, 1936, plaintiff did comparatively little radio advertising business, but in that month plaintiff established a Radio Department in his business and employed defendant, Stephen R.

Wilhelm, by written contract of employment, as manager of said Radio Department. Defendant continued in the employment of plaintiff as manager of said Radio Department under this contract of September, 1936, until said contract was rescinded by the parties on July 2, 1937, at which time a new written contract of employment, dated July 2, 1937, was entered into between plaintiff and defendant. This new contract of July 2, 1937, reads as follows:

" 'Memorandum of Agreement.

" 'This agreement made this 2nd day of July, 1937, by and between Payne Advertising Agency, Inc., a corporation operating under the laws of the State of Texas, acting herein by and through its president, duly authorized, hereinafter styled the party of the first part, and Steve Wilhelm, of the City of San Antonio, Bexar County, Texas, hereinafter styled the party of the second part, Witnesseth:

" '1. The party of the first part agrees to employ the party of the second part to conduct and manage the Radio Department of the Payne Advertising Agency for and during the ensuing two years from the date of this agreement.

" '2. The party of the second part agrees to devote his time and best efforts exclusively to the development and upbuilding of said Radio Department of the Payne Advertising Agency during the period of this agreement.

" '3. The party of the first part agrees to pay the party of the second part a sum equal to sixty-five per cent (65%) of the net commissions and/or earnings of said Radio Department, said net commissions and/or earnings being arrived at by deducting the monthly operating costs and expenses of the Radio Department from the sum of the gross commissions and/or earnings of same.

" '4. In the event that the total gross earnings of the Radio Department shall exceed the sum of twenty thousand ($20,000) dollars per year, the above paragraph, number 3, shall be null and void, and party of the first part then agrees to pay the party of the second part a sum equal to 50% of the gross commissions and/or earnings of said Radio Department, party of the first part assuming the obligations of all expense connected with the proper operation of said Radio Department.

" '5. In the event that the total gross earnings of the Radio Department shall exceed the sum of forty thousand ($40,000) dollars per year, the above paragraphs, numbers three and four, shall be null and void, and party of the first part then agrees to pay the party of the second part a sum equal to 35% of the gross commissions and/or earnings of said Radio Department, party of the first part assuming the obligation of all expense connected with the proper operation of said Radio Department.

" '6. It is understood and agreed that all charges made to clients for any services in connection with the Radio Department, no matter of what nature, shall be authorized by the party of the first part and billed in the regular manner by the agency. In like manner, all collections, payments on account, advances for services and items of similar nature shall be handled through the office of the agency, and the party of the second part hereby expressly agrees to this method of handling the financial details of the Department.

" '7. It is hereby agreed that all professional services of party of the second part are a part of the earnings of the Radio Department of the Payne Advertising Agency, with the exception that all talent charges for talent performed by party of the second part are the exclusive property of party of the second part.

" 'In Witness Whereof the parties hereto have signed their names this 2nd day of July, 1937.

" 'Payne Advertising Agency, Incorporated,
" 'By J. S. Payne, President,
" 'Party of the First Part
" 'Steve Wilhelm,
" 'Steve Wilhelm,
" 'Party of the Second Part.'

"III. Under the above contract of July 2, 1937, defendant continued in the employment of plaintiff as manager of its Radio Department until October 1, 1937, when defendant terminated his services to plaintiff and left plaintiff's employment. Plaintiff fully performed its party of said contract in all respects, and did not consent to, or acquiesce in, defendant's terminating said employment.

"(a) Defendant possessed extraordinary ability and talents as a radio announcer as well as a salesman of radio advertising space and services. Defendant's duties

and services to plaintiff as manager of said Radio Department required special skill and merit, and consisted of the selling of radio space and radio advertising services to persons or business firms who might be interested therein; and under said contract of July 2, 1937, as well as under said contract of September, 1936, defendant agreed to devote his time and best efforts exclusively to the development and upbuilding of said Radio Department. As a direct result of defendant's terminating said employment plaintiff lost the value of defendant's services.

"(b) When defendant entered plaintiff's employment in September, 1936, he brought to plaintiff's Radio Department certain customers and from time to time during the following thirteen months while defendant remained in plaintiff's employment, he brought other customers to said Radio Department, and for said thirteen-month period plaintiff received from the business of the Radio Department an average monthly net profit of $81.63. For the first seven months of that period beginning with the month of September, 1936, and ending March 31, 1937, plaintiff received from the business of its Radio Department an average monthly net profit of $49.83. Beginning with the month of March, 1937, the business of the Radio Department began to increase, and for the succeeding six months, being the six-months period immediately preceding October 1, 1937 (the date on which defendant left plaintiff's employment), there was a considerable increase in said business over previous months, and for that period plaintiff received from the business of its Radio Department an average monthly net profit of $106.05; and for the last three months of said period, from July 1, 1937 (the day prior to the making of the new contract of July 2, 1937), to October 1, 1937, there were additional increases in business of the Radio Department over previous months and for said last three months plaintiff received from its Radio Department an average monthly net profit of $136.17.

"(c) Plaintiff's Radio Department and its radio advertising business showed a profit prior to and at the time of the defendant's termination of said employment on October 1, 1937. In the early part of September, 1937, defendant without the knowledge or consent of plaintiff, established an advertising agency of his own under the name of 'Stephen R. Wilhelm Advertising Agency.' On October 1, 1937, most of plaintiff's customers ceased to patronize plaintiff and did not patronize plaintiff thereafter. Immediately, plaintiff's radio advertising business dropped from a net profit of $121.50 for the month of September, 1937, to a gross profit of $27.41 for the month of October, 1937, and from then on for the remainder of the two-year period of the contract of July 2, 1937, which expired on July 2, 1939, there was a considerable decline in profits which plaintiff received from its radio advertising business, the average monthly gross profits which plaintiff received from such business for the remainder of the contract period (October 1, 1937, to July 2, 1939), being $18.84.

"(d) The net profits mentioned in subdivisions (b) and (c) of this paragraph III, which plaintiff received from its Radio Department prior to October 1, 1937, represent plaintiff's share of the net commissions or net earnings of said Radio Department after deducting from said net commissions or net earnings defendant's 65 per cent thereof as provided by said contracts of September, 1936, and July 2, 1937.

"(e) I further find as a fact that after Wilhelm left the plaintiff's employment, plaintiff did not employ any other person to manage the Radio Department of the Payne Advertising Company; that little, if any, effort was made by plaintiff to replace Wilhelm.

"IV. All of the testimony introduced in the trial was from the officers, agents, employees and books of plaintiff, and defendant did not offer any testimony.

"Conclusions of Law.

"The elements of damages claimed by plaintiff, that is, loss of anticipated profits, cannot be recovered because they are dependent upon uncertain and changing conditions and the chances of business, and there is no evidence from which they may be intelligently estimated, and the loss of the defendant's services was too uncertain, speculative, contingent and remote to justify a finding as to the amount of such damages, or to form the basis of the judgment that there would have been any profits at all."

There is no question made as to the pleadings, and it is deemed unnecessary to summarize same.

Under the record as made here we have an unlawful breach of a contract of employment. A duty is indisputably shown and the breach thereof.

The appeal centers around the third element of the cause of action. Without a showing of damage a cause of action is not proven. Damage here is the ultimate issue. The elements of damage for which plaintiff sought recovery were lost profits and loss of the value of the services of defendant. After all, the two elements of damage are in reality about the same. The value of the services of defendant to plaintiff should represent the profits accruing to plaintiff from such services. No substantial conflict appears in the testimony. Defendant offered no testimony. The question is, then, did the evidence present an issuable question of fact as to whether there was a loss of profits by plaintiff as a result of the breach of the contract? If an issue was raised by the testimony as to whether or not there was a loss of profits, then the decision of the trial court is final thereon; if it fails to be sufficient to raise such issue, the judgment of the trial court is likewise correct. In the event that the probative effect of the testimony was such that it established a loss of profits with such certainty that the minds of reasonable men could not differ relative thereto, there is reversible error shown in the case.

The evidence tends to show, and the trial court findings affirm, that defendant possessed extraordinary ability and talents as a radio announcer, as well as a salesman of radio advertising and services. Further, that from the commencement of defendant's services in September, 1936, under another contract, to their close under the contract in question here, profits had accrued to plaintiff from the Radio Department of its business. The amount of these monthly profits is shown by the evidence and found by the trial court. For the entire thirteen months of defendant's services to plaintiff its net profits averaged $81.63 per month. For the six months next preceding October 1, 1937, plaintiff's profits averaged $106.05 per month; for the period from July 2, 1937, to October, 1937, plaintiff's average monthly net profit was $135.17. This was the period of service under the contract directly involved herein. After defendant quit the employment, the average monthly gross profit from the Radio Department for the remainder of the two years the contract by its terms was to be in force, was $18.84 per month.

There is wanting from the brief of appellant any reference to the statement of facts showing that the realization of the net profits during defendant's services were due solely to his efforts; there is wanting in evidence here efforts made in the transaction of business after defendant quit the service.

It cannot be gainsaid that the minds of reasonable men may differ on the probative effect of undisputed testimony; likewise as to established facts not comprehending the ultimate issue. Even if it be conceded that it might be inferred from the evidence and facts found that plaintiff lost profits as a natural or contemplated consequence of the facts found, the question posed in this appeal is not answered. This might be true, and a different inference be likewise supported from the same facts.

In substance and effect the trial court found that the evidence failed to show that it was more probable that profits were lost, than that they were not lost. Judgment for defendant was a logical and necessary consequence of such finding.

We do not interpret the conclusions of the trial judge to mean that had a loss of profits been shown by the evidence there could be no recovery thereof, but rather that no loss of profits was shown as a natural consequence of the wrong of defendant.

Profits were realized during the employment, the amount thereof was shown. A substantial decrease occurred after the employment ceased. Defendant had a special and peculiar skill and ability in the line of his employment. Some of plaintiff's customers ceased to patronize plaintiff and patronized a competing business established by defendant. If a loss of profits is necessarily inferred, it must be from the above-recited facts.

On the other hand, the extent of the contribution of defendant to the profits realized is only established by the fact that such profits were realized during his employment and by the fact that he had ability in the line of his employment.

The manner of the transaction of the business after the breach of contract does not appear. It is here also only by inference that the decrease in the profits may be attributed to defendant's wrong. This in-

ference, if logically legitimate, finds its basis only in the shrinkage of the profits thereafter.

In discussing the sufficiency of evidence to sustain an award of damages for loss of profits in the case of Southwest Battery Corporation v. Owen, 131 Tex. 423, 115 S. W.2d 1097, 1099, Judge Sharp says: "In a case of this kind the real difficulty lies not so much in the statement of the rules as it does in the application of the correct rule."

In the course of the opinion in the case last above referred to, it is stated: "It is impossible to announce with exact certainty any rule measuring the profits the loss for which recovery may be had. The courts draw a distinction between uncertainty merely as to the amount and uncertainty as to the fact of legal damages. Cases may be cited which hold that uncertainty as to the fact of legal damages is fatal to recovery, but uncertainty as to the amount will not defeat recovery. A party who breaks his contract cannot escape liability because it is impossible to state or prove a perfect measure of damages."

Numerous authorities are cited in support of the proposition announced. On the facts of the case it was held that an issue of fact was raised as to whether there had been a loss of profit. In other words, a question of fact was presented, and a judgment was held to be sustained by the evidence for lost profits.

This is true of many of the other cases cited by appellant in support of its assignments. In almost every instance the question is discussed from the standpoint of the sufficiency of the evidence to sustain a finding of damage as a result of lost profits. In effect most of the cases are authority that the evidence therein was sufficient to make the loss of profits an issue, and finding of lost profits was sustained.

In the instant case we have the situation presented as to whether a finding is sustained that the evidence fails to show a loss of profits. Here we have no misapprehension by the trial court of the law applicable. The holding is not that in all cases lost profits are not recoverable, but the evidence is insufficient to show such loss.

The only facts vital in the disposition of this case as to which, under the evidence, there could be any dispute were as to whether profits were lost as a natural consequence of the breach of the contract, and, if so, the amount thereof. This being true, many of the findings of the trial court, such as to the making of profits while the contract was being observed and the loss following the breach, are evidentiary in their nature and not ultimate. The terms of the contract are clear and the breach thereof is indisputable.

Could we say, if the trial had been to a jury, the court should have submitted only one question, and that, in substance, What sum would reasonably compensate plaintiff for the loss of profits which resulted to plaintiff as a natural and probable result of defendant's breach of contract? Such a submission would assume that profits were lost. Unless, under such a jury submission, the court might have properly assumed, as an established fact, that profits were lost, the submission would be clearly incorrect—erroneous because it assumed an issuable fact that was for the jury.

We believe under the evidence here there was an issue as to whether or not future profits were lost. This being so, the finding of the trial court is final on the question.

We cannot in this case substitute the findings of this court for those of the trial court.

The judgment is affirmed.